# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CARLA MARIE MOCERI,

                    Petitioner,                   Case Number: 2:06-CV-15009

v.                                         HONORABLE VICTORIA A. ROBERTS

CLARICE STOVALL,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

Petitioner Carla Marie Moceri, a state inmate currently incarcerated at the Huron Valley
Complex in Ypsilanti, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254. Petitioner challenges her convictions for first-degree criminal sexual
conduct and first-degree child abuse. For the reasons set forth below, the Court denies the
petition.

### II. Facts

Petitioner's conviction arises out of the assault of an 8-month-old child, Natasha Van
Gessell. On June 4, 1996, Petitioner babysat Van Gessell. Carol Landsberg, Natasha's
grandmother, testified that, on that date, Petitioner called her to tell her that Natasha had been
injured; she proceeded to Petitioner's home. When she arrived at Petitioner's home, Petitioner
led Landsberg into a bedroom, where Landsberg saw Natasha lying in a crib with a towel draped
over her. Landsberg observed blood on the towel and sheets. She also observed a ball, a rattle,
and a toy chipmunk in the crib. The chipmunk appeared to be 4 to 5 inches tall, brown, hard,

and was missing an ear. Petitioner informed Landsberg that when she cleaned Natasha after Natasha had a bowel movement she noticed blood. Landsberg dressed Natasha and took her to the hospital.

Police Detective James Matheney testified that he was called to St. John's Hospital to conduct an investigation regarding a possible criminal sexual conduct offense. He spoke to Landsberg and Natasha's father. Landsberg gave him the toy chipmunk.

Katherine Van Gessel, Natasha's mother, testified that she dropped Natasha off at Petitioner's house at approximately 8:00 a.m., on June 4th. At approximately 4:00 p.m., Petitioner's husband, with whom Van Gessel worked, told her that Petitioner had attempted to contact her. Van Gessel called Petitioner at approximately 4:30. She could hear her daughter screaming in the background and was told that her daughter was bleeding from the vaginal area. Petitioner told her that Natasha had had a bowel movement which caused the bleeding. Van Gessel met her mother and daughter at South Macomb Hospital. She viewed the baby's injury and observed that it looked like she had been cut with a knife. On doctor's advice, she had Natasha transferred to St. John's Hospital, where she could be operated on by a pediatric surgeon.

Before proceeding to St. John's, Van Gessel stopped at Petitioner's home to pick up a diaper bag and the toy chipmunk. Petitioner had thrown out the chipmunk, but retrieved it from the trash. Van Gessel observed that Natasha's crib sheet had been packed in the diaper bag. The sheet had already been washed, but still had a dark circle stain on it, which appeared to be blood.

Dr. Michael Kobernick testified that he was the emergency room physician who treated

Natasha at the Macomb Hospital Center on June 4, 1996.  He noted that Natasha was bleeding from a large laceration in her vagina.  The injury was too severe to be repaired in the emergency department, and required a pediatric surgeon who could administer anesthesia.  Dr. Kobernick testified that the wound was less than 6 hours old and was caused by a penetrating poke to the vaginal area.  The injury was caused by a significant force.  Dr. Kobernick transferred Natasha to St. John's Hospital in Detroit where she could be treated by a pediatric surgeon.

Dr. Alan Flake, a pediatric surgeon, testified that he treated Natasha on June 4, 1996.  Upon initial examination, he observed a laceration in the perineum.  He ceased further examination because it would be too painful for the child without anesthesia.  Once in surgery, he noted that the wound was still actively bleeding and concluded that the wound was a fresh one.  He detailed the extensive trauma and damage he observed during surgery, requiring him to suture three layers of sphincter muscles and the perineal area and to cauterize the bleeding in the vaginal walls.

Dr. Flake testified that the injury evidenced a directed and focused entry into the vagina.  He noted that the injuries suffered were consistent with those usually seen in sexually abused girls.  He observed no external trauma to the labia or legs.  He did not believe the injury could have been caused by the toy chipmunk.  The injury would have been caused by an object one to three centimeters in diameter and six to eight centimeters long.  He further testified that the injury could not have been caused by a five-year-old child (Petitioner's five-year-old son was home at the time of the injury) because the object was inserted in a focused and preconceived manner.

Petitioner testified in her own defense.  She testified that, on the afternoon of June 4th,

3

she stripped Natasha of her clothes to clean her after feeding her. She left Natasha in the crib for a few moments while she retrieved a cloth to clean the baby. When she returned, she lifted Natasha's legs to put a diaper on her and noticed blood trickling from the baby's vaginal area. She called the baby's grandmother, who arrived a short time later. The grandmother dressed Natasha and took her to the Hospital. Petitioner took a toy chipmunk which had been in the crib with Natasha and threw it in the trash. She denied harming the baby. She theorized that the baby injured herself with the chipmunk toy when she was retrieving a wet cloth.

### III. Procedural History

Following a jury trial in Macomb County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct and first-degree child abuse. On June 8, 2000, she was sentenced to 15 to 22-1/2 years' imprisonment for the criminal sexual conduct conviction and 8 to 15 years for the child abuse conviction, to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I. Whether defendant's conviction of criminal sexual conduct in the first degree and child abuse in the first degree violate the double jeopardy clause of the United States Constitution and Michigan Constitution?

II. Whether there was insufficient evidence to establish that the appellant committed a sexual act?

III. Whether the trial court erred in failing to given an instruction concerning the destruction by the police department of the chipmunk toy?

IV. Whether the court erred in ruling that the prosecutor could cross-examine proposed character witnesses going beyond the scope of the direct examination of those witnesses?

V. Whether the defendant was denied a fair trial when the mother of the child stormed from the stand and refused to answer questions regarding a civil suit

against the defendant?

VI.    Whether the cumulative effect of multiple errors act to deny appellant a fair trial?

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Moceri*, No.

228166 (Mich. Ct. App. Aug. 30, 2002).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising

the same claims raised before the Michigan Court of Appeals.  *People v. Moceri*, No. 122575

(Mich. March 31, 2003).

Petitioner then filed a motion for relief from judgment in the trial court, raising the

following claims:

    I.    Defendant's rights to due process and speedy trial were violated when the four-year delay resulted in substantial, actual prejudice.

    II.    Defendant's rights to due process and fair trial were violated when the prosecutor presented false testimony on a material issue of fact, and committed other acts of prosecutorial misconduct.

    III.    Defendant's rights to due process and confrontation were violated when the trial court restricted the scope of cross-examination of a crucial prosecution witness regarding a civil action that was commenced with respect to the same matter as the criminal trial.

    IV.    Defendant's right to due process was violated when the trial court failed to reinstruct the jury on sexual penetration after refusing to address the jury's specific question regarding the definition of "sexual act."

    V.    There was no evidence that defendant knowingly or intentionally injured the child.

    VI.    Defendant's right to compulsory process was violated when the trial court ruled that defendant's character reputation for truth and veracity could be impeached with an allegation of domestic violence.

    VII.    Defendant's rights to due process and fair trial were violated when the court allowed into evidence an "adorable" photograph of the child which served no purpose but to inflame the passions of the jury.

VIII.   Defendant's right to have the effective assistance of counsel for her defense was violated.

IX.   The cumulative effect of the multiple errors complained of was to deprive defendant a fair trial, a trial whose result is reliable.

X.   Defendant was denied the effective assistance of appellate counsel where her appellate attorney did not raise the above issues in her appeal of right.

The trial court appointed counsel to represent Petitioner, who raised the following additional claim:

I.   Defendant's right to due process was violated when the sentencing court did not disclose the content of the victim impact letter before sentencing.

The trial court denied the motion.  *People v. Moceri*, No. 97-1645-FC (Macomb County Circuit Court Nov. 12, 2004).

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims raised before the trial court.  The Michigan Court of Appeals denied leave to appeal.  *People v. Moceri*, No. 266559 (Mich. Ct. App. June 7, 2006).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Moceri*, No. 131421 (Mich. Oct. 31, 2006).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

I.   Petitioner's right to a speedy trial was violated.

II.   Petitioner's trial was rendered unfair by the misconduct of the prosecutor in allowing false testimony to be entered at trial.

III.   Petitioner's trial was rendered unfair by the omission of a necessary jury instruction regarding the destruction of evidence.

6

IV.     Petitioner was denied the effective assistance of counsel in the trial court.

V.      Petitioner was denied her right to a fair trial when a prosecution witness refused to submit to cross-examination and stormed off the stand.

VI.     Petitioner's rights under the Confrontation Clause were violated by the trial court's limitations on the cross-examination of a witness.

VII.    The trial court erroneously allowed the prosecutor to cross-examine Petitioner's character witness regarding previous instances of abuse causing her not to call the witnesses.

VIII.   Petitioner's trial was rendered unfair by the prosecutor being allowed to cross-exam witnesses on matters not covered in direct examination.

IX.     The trial court allowed photographic evidence to be admitted at trial in violation of evidentiary law.

X.      There was constitutionally insufficient evidence admitted at trial to support Petitioner's conviction.

XI.     The trial court failed to re-instruct the jury.

XII.    There was no evidence that Petitioner knowingly injured the child.

XIII.   The convictions of criminal sexual conduct and child abuse violate double jeopardy.

XIV.    The court erred in not disclosing the contents of the victim impact statement before sentencing.

XV.     Cumulative errors denied Petitioner a fair trial.

XVI.    Petitioner was denied the right to effective assistance of counsel during her direct appeal.

## IV.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts

reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

   (1)     resulted in a decision that was contrary to, or involved an
           unreasonable application of, clearly established Federal law, as
           determined by the Supreme Court of the United States; or

   (2)     resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
           State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998).

Additionally, this court must presume the correctness of state court factual determinations. 28

U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We

give complete deference to state court findings unless they are clearly erroneous").

   The United States Supreme Court has explained the proper application of the "contrary

to" clause as follows:

   A state-court decision will certainly be contrary to [the Supreme Court's] clearly
   established precedent if the state court applies a rule that contradicts the
   governing law set forth in our cases. . . .

   A state-court decision will also be contrary to this Court's clearly established
   precedent if the state court confronts a set of facts that are materially
   indistinguishable from a decision of this Court and nevertheless arrives at a result
   different from [the Court's] precedent.

---

[1]     28 U.S.C. § 2254(e)(1) provides, in pertinent part:

   In a proceeding instituted by an application for a writ of habeas
   corpus by a person in custody pursuant to the judgment of a State
   court, a determination of a factual issue made by a State court shall
   be presumed to be correct.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 410-11.

## A. Alleged Procedural Default

Respondent argues that the majority of Petitioner's claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525, 117 S. Ct. at 1523. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of all of Petitioner's claims.

## B.  Right to Speedy Trial

Petitioner alleges that her constitutional right to a speedy trial was violated.  Official

accusations of criminal sexual conduct and child abuse were made on June 4, 1996.  The

Michigan Department of Child Protective Services promptly investigated the allegations.

Petitioner was arrested on February 18, 1997, and her trial commenced on April 4, 2000.  Thus,

the interval between her arrest and trial was approximately three years.

The trial court, in denying Petitioner's motion for relief from judgment, held that

Petitioner's right to a speedy trial was not violated, stating, in pertinent part:

> To determine whether a defendant has been denied his or her right to a speedy
> trial, this Court considers (1) the length of delay, (2) the reason for the delay, (3)
> the defendant's assertion of the right to a speedy trial, and (4) any prejudice to the
> defendant.  *People v. Gilmore*, 222 Mich. App. 442, 459; 564 N.W.2d 158 (1997).
> If the delay is under eighteen months, the defendant must prove that he or she
> suffered prejudice. . . . . A delay of more than eighteen months is presumed to be
> prejudicial; the prosecution bears the burden of proving lack of prejudice to the
> defendant. . . . The establishment of a presumptively prejudicial delay "triggers an
> inquiry into the other factors to be considered in the balancing of competing
> interests to determine whether a defendant has been deprived of the right to a
> speedy trial." *Id.*
>
> In the case at hand, it is clear that the approximate 36 months it took to get the
> case to trial is presumed to be prejudicial to Defendant's right to a speedy trial.
> However, of the 36 months it took to bring the case to trial, approximately 23
> months can be attributed to Defendant's pretrial motions, Defendant's requests for
> adjournments, stipulations by both parties for an adjournment, and Defendant's
> plea and subsequent withdrawal of the plea.  The remaining 13-month delay can
> be attributed to adjournments by the Court, and adjournments requested by the
> People.  The Court finds the 13-month delay did not violate Defendant's right to a
> speedy trial in light of the fact Defendant failed to assert her right to a speedy
> trial.  The Court is also satisfied that the delay did not create any prejudice to
> Defendant.

*Moceri*, slip op. at 3-4.

In deciding this claim, the trial court, although not citing Supreme Court precedent,

clearly applied the standard set forth by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514

(1972). In *Barker*, the United States Supreme Court has held that courts should consider the

following four factors in determining whether a defendant's constitutional right to a speedy trial

has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's

assertion of his or her right to speedy trial; and (4) prejudice to the defendant. *Id.* at 528.

    The first question the Court addresses is the length of the delay. "[U]ntil there is some

delay which is presumptively prejudicial, there is no necessity for inquiry into the other facts that

go into the balance." *Id.* at 530. The Supreme Court has held that, generally, depending on the

nature of the charges, a delay that approaches one year is presumptively prejudicial. *Doggett v.

U.S.*, 505 U.S. 647, 652 n. 1 (1992). The trial court held that the delay, if it could be attributed to

the prosecution in its entirety, would be prejudicial. However, the trial court found that only 13

months of the delay was attributable to the prosecution. Prejudice is presumed where there has

been a delay so excessive that it "presumptively compromises the reliability of a trial in ways

that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655; 112 S. Ct. at

2693.[2] Based on the facts and circumstances of this case, the portion of the delay attributable to

the government's negligence, which is at most thirteen months, does not give rise to a

presumption of prejudice. *See, e.g.*, *Scrawny*, 331 F.3d at 559 (thirteen and a half month delay

attributable to the government's negligence did not give rise to a presumption of prejudice);

*United States v. Cook*, 181 F.3d 104 (6th Cir.1999) (unpublished *per curiam* opinion) (sixteen

---

[2]    "'Presumptively prejudicial' for purposes of triggering the *Barker* four-factor inquiry is
different from 'presumptively prejudicial' for purposes of assessing the prejudice prong."
*Maples v. Stegall*, 427 F.3d 1020, 1030 (6th Cir. 2005). Prejudice is presumed for purposes of
triggering a *Barker* analysis when the delay has approached one year; prejudice is presumed in
the context of the prejudice prong when the delay was excessive. *Id.*

months not presumptively prejudicial), cert. denied, 528 U.S. 942 (1999). When prejudice has been found, the government's delay has typically been shockingly long. *See, e.g.*, *Doggett*, 505 U.S. at 657 (six years); *United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999) (five and one-half years); *United States v. Graham*, 128 F.3d 372, 376 (6th Cir.1997) (eight years). See also *Barker, supra* (five year delay, with all but seven months attributable to the government, was extraordinary, but did not violate the constitution, where defendant, who did not assert his right until the day of trial, did not want a speedy trial).

The Court next inquires into the cause of the delay. The trial court held that all but 13 months of the delay was attributable to the Petitioner. Petitioner has failed to show this conclusion was clearly erroneous.

Third, the trial court held that Petitioner failed to assert her right to a speedy trial before the trial court. The Supreme Court has held that "failure to assert the right will make it difficult for a defendant to prove that [s]he was denied a speedy trial." *Barker*, 407 U.S. at 532.

Finally, the Court considers the question of prejudice to the petitioner. The Supreme Court has held that prejudice should be "assessed in light of the interests of defendants which the speedy trial right was designed to protect. . . : (1) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Id.* While Petitioner undoubtedly experienced anxiety and concern during the period she awaited trial, she was released on a personal recognizance bond during that time period. In addition, Petitioner fails to show that the trial court's conclusion that her defense was not impaired by the pretrial delay was unreasonable.

The trial court, although not specifically citing *Barker,* applied the standard articulated

therein, in denying Petitioner's speedy trial claim. The Court finds that its application of *Barker* was neither contrary to nor an unreasonable application of Supreme Court precedent. 28 U.S.C.§ 2254(d)(1). The delay, while long, was not the result of the prosecutor's bad faith or an attempt to gain a tactical advantage. Petitioner failed to assert her right to a speedy trial. Petitioner was not incarcerated during the delay and, although the delay was long, the portion attributable to the prosecution was not sufficiently long to warrant the presumption of prejudice. Petitioner failed to show she was prejudiced by the delay. Therefore, habeas relief is denied on this claim.

### C. Prosecutorial Misconduct

Petitioner argues that habeas relief is warranted because the prosecutor engaged in misconduct by improperly characterizing the condition and pliability of the toy chipmunk in his examination of pediatric surgeon Alan Flake. Petitioner argues that the prosecutor's mischaracterization of the toy led Dr. Flake to give incriminating, but inherently unreliable testimony. Petitioner further argues that the prosecutor was argumentative with witnesses and the Court, belittled witnesses, defense counsel, and the defendant, interposed improper objections, argued facts not in evidence, and mischaracterized expert testimony.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348,

1355 (6th Cir. 1993)).

During the cross-examination of Dr. Flake, the prosecutor characterized the chipmunk as follows:

> [The toy was] a hard plastic toy with arms and ears protruding and legs, about four, four-and-a-half inches long, about two inches wide.

Tr., Vol. IV, pp. 60-61.

Petitioner takes issue with the description of the toy as "hard" plastic. She argues that the toy was pliable. In fact, Petitioner's grandmother testified that the toy was a hard plastic. Thus, the prosecutor did not mischaracterize the testimony when referring to the toy as hard.

The remainder of Petitioner's prosecutorial misconduct claims do not establish any misconduct on the part of the prosecutor. The transcript shows that the prosecutor vigorously prosecuted this case. She carefully presented her case, cross-examined witnesses with vigor, and, relying on the testimony presented at trial, questioned the credibility of the defense. The prosecutor's conduct was appropriate and did not compromise the fairness of Petitioner's trial.

### D. Jury Instruction Regarding Destruction of Evidence

Petitioner argues that she was denied her right to a fair trial when the trial court denied defense counsel's request for an instruction regarding the destruction of the chipmunk toy.

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, stated, in relevant part:

> We review a trial court's determination of whether a jury instruction is accurate and applicable in view of all the factors present in a particular case for an abuse of discretion. . . . An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there is no justification or excuse for the ruling. . . .
>
> We find no basis for reversal. Michigan has long recognized that when material

14

> evidence in control of a party is not produced at trial, the opposing party is
> entitled to an adverse inference instruction. . . . However, absent the intentional
> destruction of exculpatory evidence, or a showing of police or prosecutorial based
> faith, a loss of evidence that occurs before a defense request for its production
> does not require reversal. . . . Indeed, in *People v. Davis*, 199 Mich. App. 502,
> 514-15; 503 N.W.2d 457 (1993), this Court held that the trial court did not err in
> declining to give an adverse inference instruction where the defendant failed to
> demonstrate bad faith in the failure to produce evidence.
>
> Here, defendant has failed to demonstrate bad faith or that the evidence was
> exculpatory. This case began in 1996, but was not tried until 2000. On July 14,
> 1999, the lead police detective ordered the toy destroyed, apparently believing the
> case had been resolved. Defendant pleaded no contest in late July 1999, but later
> withdrew her plea in September 1999. At trial, a pediatric expert, who operated
> on the victim following the incident, testified that the chipmunk toy was
> "*absolutely not*" the cause of the injury. Because defendant has not demonstrated
> prejudice, or that the police or prosecution acted in bad faith, the trial court did
> not abuse its discretion in declining to give the requested adverse inference
> instruction.

*Moceri*, slip op. at 3-4.

An erroneous jury instruction warrants habeas corpus relief only where the instruction

"'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v.

McGuire*, 502 U.S. 62, 72 (1991) *(quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t

must be established not merely that the instruction is undesirable, erroneous, or even 'universally

condemned', but that it violated some [constitutional] right.'" *Donnelly v. DeChristoforo*, 416

U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must

be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502

U.S. at 72 (*quoting Cupp,* 414 U.S. at 147). The Michigan Court of Appeals held that the trial

court did not err in failing to give the instruction. Petitioner has failed to show that the failure to

give an adverse inference instruction so infected the entire trial as to violate due process.

### E. Ineffective Assistance of Trial Counsel

Petitioner alleges that her trial attorney was ineffective in: (i) failing to challenge the destruction of the toy chipmunk; (ii) failing to assert her right to speedy trial; (iii) failing to object to the prosecutor's description of the toy to Dr. Flake; (iv) failing to cross-examine Van Gessell on her civil suit; (v) failing to present character witnesses; and (vi) failing to object to the trial court's handling of the jury's question.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced

petitioner.  A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

Petitioner argues that counsel was ineffective in failing to object to the destruction of the toy chipmunk.  The record clearly shows that defense counsel objected to the toy's destruction and moved for a mistrial on that basis.  Moreover, Petitioner fails to show that the toy's destruction was the result of bad faith.  The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id.*  However, "the Due Process Clause requires a different result when . . . deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v. Youngblood*, 488 U.S. 51, 56 (1989).  The state's duty to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." *Trombetta*, 467 U.S. at 488 (1984).  "To meet this standard . . . evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489.  Further, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58.

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court

of Appeals, held that Petitioner's rights were not violated because the police failed to preserve the evidence. Although not specifically citing *Youngblood* and *Trombetta*, the state court clearly applied the standard articulated in those cases. The Michigan Court of Appeals held that Petitioner failed to show that the police acted in bad faith or that the evidence was exculpatory. *Moceri*, slip op. at 4. The Court finds that, given the court of appeals' conclusion, which Petitioner has not shown to be contrary to or an unreasonable application of Supreme Court precedent, counsel was not ineffective in his handling of the destruction of the toy.

Next, Petitioner claims that her trial attorney was ineffective in failing to assert her right to a speedy trial. As discussed above, Petitioner has not shown that she was prejudiced by the delay. Therefore, she cannot satisfy *Strickland*'s prejudice prong.

Third, Petitioner cannot show that counsel was ineffective in failing to object to the prosecutor's description of the toy. The prosecutor's description of the toy was supported by the victim's grandmother's testimony. Therefore, there was insufficient basis for an objection.

Fourth, Petitioner argues that counsel was ineffective in failing to cross-examine the victim's mother regarding the civil suit she filed against Petitioner. The record shows that counsel effectively cross-examined Natasha's mother on this issue.

Next, Petitioner argues that counsel was ineffective in failing to present character witnesses. Petitioner's argument in this regard is conclusory. She fails to identify any specific witnesses who should have been called or to state with any specificity how they would have testified. Petitioner has failed to overcome the presumption that counsel's conduct was the result of sound trial strategy.

Finally, Petitioner argues that counsel was ineffective in failing to object to the trial

court's handling of the jury's question regarding the definition of "sexual act." As discussed below, Petitioner has failed to show that the trial court's response was inappropriate. Therefore, she cannot show that counsel was ineffective in failing to object to an appropriate response.

### F. Victim's Mother's Testimony

Petitioner argues that she was denied her right to a fair trial when the victim's mother "stormed from the stand" and refused to answer questions regarding a civil suit. The trial court denied defense counsel's subsequent motion for a mistrial.

The Michigan Court of Appeals found Petitioner's characterization of what transpired to be inaccurate. Quoting at length from the trial court transcript, the state court noted that almost immediately after the victim's mother became upset, the trial court ordered that the jury leave the courtroom. The court of appeals explained:

> Contrary to defendant's claim, the witness did not storm out of the courtroom and refuse to answer any further questions. Rather, the jury was sent out of the courtroom by the trial court, and, after a brief break, the jury returned and the witness continued to testify on cross-examination, redirect, and re-cross-examination. Further, the outbursts from the victim's mother during her testimony were unresponsive, volunteered answers to properly asked questions. The trial court took the necessary steps to minimize the effect of the outbursts on the jury. The court instructed the jury to disregard the witness' outburst and her exhibition of emotion, and that none of what transpired was relevant to the case and, therefore, should not be considered in evaluating defendant's innocence or guilt. Because defendant has not shown prejudice warranting a mistrial, the trial court did not abuse its discretion by denying defendant's motion for a mistrial.

*Moceri*, slip op. at 6.

The Court has reviewed the trial court transcripts and finds that the Michigan Court of Appeals' summary of the victim's mother's outburst and its aftermath is accurate. The Court finds that the court of appeals' decision that the victim's mother's conduct and the trial court's handling of her conduct did not deprive Petitioner of her right to a fair trial is not contrary to or

an unreasonable application of Supreme Court precedent. Accordingly, habeas relief is denied on this claim.

## G. Admission of Evidence

In her sixth through ninth claims for habeas relief, Petitioner challenges several of the trial court's evidentiary rulings. First, Petitioner argues that her right to present a defense was violated when the trial court limited her cross-examination of the victim's mother regarding a civil suit filed against Petitioner. Second, in her seventh and eight claims, Petitioner challenges the trial court's finding that the prosecutor would be able to cross-examine Petitioner's character witnesses regarding previous instances of alleged domestic abuse. Finally, Petitioner argues that the trial court erred in allowing an "adorable" picture of the victim to be admitted into evidence.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." *Washington v. State*, 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). The Supreme Court has described the "most basic ingredients of due process of law" as follows:

> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense -- a right to his day in court -- are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."

*Washington v. Texas*, 388 U.S. 14, 18 (1967) (emphasis supplied), *quoting In re Oliver*, 333 U.S. 257 (1948).

Further, the Supreme Court described the right to present a defense as follows:

> The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the

20

right to present his own witnesses to establish a defense. This right is a
fundamental element of due process of law.

*Id.*

This Court recognizes that, while the right to present a defense is a fundamental tenet of

due process, "a defendant's right to present evidence is not unlimited, but rather is subject to

reasonable restrictions." *United States v. Scheffer*, 118 S. Ct. 1261, 1264 (1998). Indeed, "[a]

defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate

interests in the criminal trial process." *Id.* (internal quotations omitted). However, the exclusion

of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.*,

*citing Rock v. Arkansas*, 483 U.S. 44, 58 (1987); *see also Chambers v. Mississippi*, 410 U.S. 283,

302 (1973); *Washington v. Texas*, 388 U.S. 14, 22-23 (1967).

In determining whether the exclusion of evidence infringes upon a weighty interest of the

accused, the court's role is not to determine whether the excluded evidence would have caused

the jury to reach a different result. *Davis v. Alaska*, 415 U.S. 300, 317 (1973). Instead, the

question is whether the defendant was afforded "'a meaningful opportunity to present a complete

defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), *quoting California v. Trombetta*, 467

U.S. 479, 485 (1984). The prosecutor's case must "encounter and 'survive the crucible of

meaningful adversarial testing.'" *Id.* at 690-691 (1984), *quoting United States v. Cronic*, 466

U.S. 648, 656 (1984).

The trial court's decision to allow limited questioning regarding the civil lawsuit was a

reasonable restriction. It allowed the defense to place the issue before the jury and to cross-

examine the victim's mother regarding the civil suit, while at the same time preventing a

tangential matter from hijacking the criminal proceedings. The Court finds that this reasonable

restriction did not deprive Petitioner of her right to subject the prosecutor's case to meaningful adversarial testing.

With respect to Petitioner's remaining evidentiary claims, "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994), *citing Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985). Only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003).

Petitioner has not shown that any of the trial court's evidentiary rulings deprived her of her fundamental right to a fair trial.

### H. Sufficiency of the Evidence

Petitioner argues that insufficient evidence was presented to sustain her convictions on two bases. First, in her tenth claim for habeas corpus relief, Petitioner argues that insufficient evidence was presented to prove beyond a reasonable doubt that Petitioner committed a sexual act. Second, in her twelfth claim, Petitioner argues that insufficient evidence was presented to sustain her first-degree child abuse conviction because the prosecutor did not show that she knowingly and intentionally injured the victim.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether

the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The last state court to issue a reasoned opinion regarding Petitioner's claim that insufficient evidence was presented to sustain her first-degree criminal sexual conduct conviction, the Michigan Court of Appeals, held, in pertinent part:

> When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *People v. Wolfe*, 440 Mich. 508, 515; 489 N.W.2d 748 (1992), amended 441 Mich. 1201 (1992). This Court will not interfere with the trier of fact's role in determining the weight of evidence or the credibility of witnesses. *Id.* at 514. Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to prove the elements of the crime. . . .

> In this case, viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented from which a jury could infer the elements of the charged offenses. Contrary to defendant's argument, proof that the penetration was committed for a sexual purpose, arousal, or gratification is not an element of CSC I. . . . . Rather, as it relate to this case, a person is guilty of CSC I if she engages in sexual penetration with a person under thirteen years of age. . . . At trial, there was evidence that the eight-month-old victim's vagina was penetrated, directly and forcefully, with a small object, which caused a large laceration and instant bleeding. There was also evidence that, at the time of the injury, defendant was the only person in the house who could have caused the injury. A pediatric expert described the child's injury as one that is seen in sexually abused older girls. This evidence, viewed in a light most favorable to the prosecution, was sufficient for a rational trier or fact to conclude that the elements of CSC I were proven beyond a reasonable doubt.

*Moceri*, slip op. at 3.

The Michigan Court of Appeals, although not citing *Jackson*, cited case law which

clearly incorporated the *Jackson* standard. Petitioner has not presented any evidence to show

that the state court's findings of fact were erroneous. Therefore, according the state court's

findings of fact a presumption of correctness, this Court concludes that the Michigan Court of

Appeals' decision that sufficient evidence was presented for a finding of guilty of first-degree

criminal sexual conduct did not "result[] in a decision that . . . involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States." 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner is not entitled to federal habeas

corpus relief with respect to this claim.

Next, Petitioner argues that insufficient evidence was presented to sustain her conviction

for first-degree child abuse because the prosecutor failed to establish that she knowingly and

intentionally injured the baby. The trial court was the last state court to issue a reasoned opinion

regarding this claim. The trial court stated, in pertinent part:

> The question of legal sufficiency only requires the Court, viewing the evidence in
> the light most favorable to the People, to determine if any rational trier of fact
> could have found the essential elements of the crime beyond a reasonable doubt.
> *People v. Hampton*, 407 Mich. 354, 368; 285 N.W.2d 284 (1979). The
> Defendant's knowledge and intent may be inferred from circumstantial evidence,
> and may also be inferred from deliberate acts. *People v. Fields*, 64 Mich. App.
> 166; 235 N.W.2d 95 (1975).
>
> In the case at hand, Dr. Michael Kobernick was the emergency doctor who
> examined the victim at the Macomb Hospital Center on June 4, 1996. The 8-
> month-old victim was bleeding from a large laceration in the vagina. The injury
> was less than 6 hours old, and was too large to be repaired in emergency due to
> the depth of the wound. The injury was caused by a penetrating poke into the
> vaginal area, and was serious since potential infection and scarring could affect
> her reproductive health. Dr. Alan Flake, a pediatric surgeon, also examined the
> victim on June 4, 1996. Dr. Flake testified that there were linear tears on the
> lining of both walls of the vagina, and a posterior tear at the back of the vagina
> that went into the perineal body, and through the fibrous muscles surrounding the
> sphincter complex. The sphincter muscles and the perineal body had to be
> rebuilt. The injury was the result of an object penetrating 10 to 12 centimeters

24

into the vagina through a directed and focused entry.

*Moceri*, No. 97-1645-FC, slip op. at 5-6.

The trial court concluded that, based upon the nature and extent of the injuries, sufficient

evidence was presented to establish that Petitioner knowingly and intentionally injured the child.

*Id.*

Again, although not citing *Jackson*, the trial court plainly incorporated the *Jackson*

standard. Petitioner has not presented any evidence to show that the state court's findings of fact

were erroneous. According the state court's findings of fact a presumption of correctness, this

Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was

presented for a finding of guilty of first-degree child abuse was not contrary to or an

unreasonable application of Supreme Court precedent.

## I. Trial Court's Decision Not to Reinstruct Jury

During the course of deliberations, the jury submitted a note asking, "Is 'sexual act'

defined by any act committed to a sex organ or area, or, any act committed with some sort of

sexual intent or motivation?" Tr., Vol. VI, at 110. The trial court instructed the jury, "You are

just going to have to read and rely on the jury instructions as you interpret them." *Id.* at 113.

The Due Process Clause does not require the use of any specific formulation for jury

instructions. *See Victor v. Nebraska*, 511 U.S. 1, 5 (1994). All that is required is that the jury be

instructed to find the defendant's guilt beyond a reasonable doubt. *Id.* "If the original jury

charge clearly and correctly states the applicable law, the judge may properly answer the jury's

question by instructing the jury to reread the instructions." *United States v. Mealy*, 851 F.2d 890,

902 (7th Cir.1988) (citations omitted). In the present case, Petitioner has failed to show that the

original jury instructions did not clearly and correctly state the applicable law. Therefore, she has failed to show that her right to due process was violated by the trial court's decision not to reinstruct the jury.

## J. Double Jeopardy

Petitioner argues that her convictions for first-degree criminal sexual conduct and first-degree child abuse violate the Double Jeopardy Clause because they punish the same acts.

The Double Jeopardy Clause of the Fifth Amendment provides, "No person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." This clause affords defendants protection against three basic harms: second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense.[3] *Brown v. Ohio*, 432 U.S. 161, 165 (1977). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature . . . , the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). "Where . . . a legislature specifically authorizes cumulative punishment under two statutes for the same conduct, regardless of whether those two statutes prescribe the 'same' conduct, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

In determining whether the Michigan legislature intended to authorize cumulative punishments in the circumstances presented here, the Court "must accept the state court's

---

[3] The Double Jeopardy Clause is made applicable to the states through the Due Process Clause of the Fifth Amendment. *Benton v. Maryland*, 395 U.S. 784 (1969).

interpretation of the legislative intent for the imposition of multiple punishments." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986); *see also McCloud v. Deppisch*, 409 F.3d 869, 874 (7th Cir. 2005) (holding that a federal court is "bound by" state court's interpretation of legislative intent).

The Michigan Court of Appeals concluded that convictions for first-degree criminal sexual conduct and first-degree child abuse arising out of the same incident do not violate the Double Jeopardy Clause because the legislature intended to impose multiple punishments. See *Moceri*, slip op. at 1-3. Accepting the state court's interpretation of legislative intent, the Court concludes that the state court's decision that the punishments did not violate double jeopardy was not contrary to or an unreasonable application of Supreme Court precedent.

### K. Victim Impact Statement

In her fourteenth claim, Petitioner argues that the trial court erred in failing to disclose the contents of the victim impact statement prior to sentencing. Petitioner does not have a due process right to disclosure of a victim impact statement prior to sentencing. *See Stewart v. Erwin*, 503 F.3d 488, 502-03 (6th Cir. 2007) (holding that a due process violation may occur if a court relies on a victim impact statement to depart upward from the sentencing guidelines, yet fails to ever disclose the statement to a defendant). In this case, Petitioner alleges only that the disclosure was tardy. In addition, she fails to allege any way in which she was prejudiced or that the victim impact statement contained false information upon which the judge relied in deciding her sentence. Therefore, she fails to establish a due process violation.

### L. Cumulative Errors

Petitioner argues that she was deprived of a fair trial because of cumulative error. The

Sixth Circuit has expressed doubt that about the validity of the argument that cumulative errors may warrant habeas relief in the post-AEDPA era. *See Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"); *Moore v. Parker,* 425 F.3d 250 (6th Cir. 2005) (same). Moreover, even if such a claim could merit habeas relief, the Court does not find that errors were committed when considered separately or together that abridged Petitioner's constitutional rights. Petitioner is not entitled to habeas relief on her cumulative errors claim.

## M. Ineffective Assistance of Appellate Counsel

Finally, Petitioner alleges that she is entitled to habeas corpus relief because her appellate counsel failed to present obvious and meritorious issues on direct appeal. Specifically, Petitioner alleges that her appellate attorney was ineffective in failing to present the claims raised in her habeas petition which were not raised on direct appeal.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). As discussed above, Petitioner has failed to show that the claims counsel failed to raise on direct appeal had any merit. Therefore, she cannot establish that counsel's failure to raise them on direct appeal prejudiced her.

### V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus

is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 4, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record and Carla Moceri by electronic means or U.S. Mail on November 4, 2008.

s/Carol A. Pinegar
Deputy Clerk